**UNITED STATES**

v.

**Edward L. JENKINS, 096 54 6492, Sergeant (E-5), U.S. Marine Corps.**

**NMCM 97 01567.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 4 Oct. 1996.

Decided 25 March 1999.

---

LT John D. Holden, JAGC, USNR, Appellate Defense Counsel.

LCDR Joann W. Melesky, JAGC, USN, Appellate Government Counsel.

Before DORMAN and LEO, Senior Judges, and COOPER, Appellate Military Judge.

COOPER, Judge:

Appellant was tried before a general court-martial composed of officer and enlisted members. Contrary to his pleas the members found appellant guilty of 37 specifications of larceny, 25 specifications of forgery, and two specifications of wrongfully using an identification card in violation of Articles 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923, and 934 (1994). He was sentenced to confinement for 15 years, forfeiture of all pay and allowances, reduction to pay grade E–1, a dishonorable discharge, and a fine of $15,000 plus an additional five years confinement if the fine was not paid. The convening authority approved the sentence as adjudged.

We have carefully examined the record of trial, appellant's nine assignments of error and the Government's responses. We conclude that the findings and sentence are correct in law and that no error materially prejudicial to the substantial rights of appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## I. Prosecutorial Misconduct

Appellant's Assignments of Error I–III and V are allegations of prosecutorial misconduct and will be considered together. The Court of Appeals for the Armed Forces defined prosecutorial misconduct as "action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (1996)(citing *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).

### A. Standard of Review

A finding of prosecutorial misconduct does not by itself mandate that appellant be given a new trial. Our superior court has stated that we must first determine if the violation "actually impacted on a substantial right of an accused." *Meek*, 44 M.J. at 5. If it did, after reviewing "the trial record as a whole," we must determine whether the rights violation was "harmless under all the facts of a particular case." *Id.* In *Meek*, the defense objected to the conduct of the prosecutor. In appellant's case there was no objection at trial and the errors are raised for the first time on appeal. The standard of review for allegations of prosecutorial misconduct will vary depending on the type of legal error alleged to have been committed. In appellant's case, he has not raised a constitutional error of a structural nature, thus we will apply the plain error standard outlined in *United States v. Powell*, —— M.J. ——, No. 97–0549 (C.A.A.F. Nov. 24, 1998).

### Discussion

#### 1. The Cross Examination Issue

The trial counsel asked appellant on 21 occasions whether other witnesses "were lying" when they testified during the Government's case. He was also asked on 3 occasions if the witnesses "made ... [their] testimony] up." Appellant argues that repeatedly asking him on cross-examination whether Government witnesses were lying was improper. *See United States v. Richter*, 826 F.2d 206 (2d Cir.1987)(holding that the prosecutor's cross-examination which compelled a defendant to state that law en-

forcement officers lied in their testimony was plain and prejudicial error.)

■ The Government argues that the actions of the prosecutor are not error, and even if error, the error was not plain.[1] We find this type of cross-examination to be improper. Ultimate determinations of credibility are issues for the members. Cross-examination which compels an accused to state that prosecution witnesses are lying is improper impeachment and opinion testimony. As such it was inadmissible under Military Rule of Evidence 402, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). Even if tangentially relevant, we find that it should have been excluded under Mil.R.Evid. 403. A trial counsel has many other options available to impeach a witness. Forcing an accused to render an opinion that the Government's witnesses are liars is designed less to be a method of impeachment and more as a method to inflame the members against appellant. *Floyd v. Meachum,* 907 F.2d 347, 354–55 (2d Cir.1990). Just as prosecutors have an ethical responsibility to avoid arguments calculated to inflame the passions of the jury, they should avoid tactics during examination of witnesses which are calculated to do the same. *See* ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 3–5.8 (1986).

■ Having determined that these questions are improper, we next look to see if the error was clear or obvious. We find, under the circumstances of this case, that it was. Asking questions that shifted the determination of credibility 24 times was unreasonable. The trial counsel is a representative of the United States, a role analogous to that of a United States Attorney. As the United States Supreme Court said:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger,* 295 U.S. at 88, 55 S.Ct. 629. As a representative of the United States, the trial counsel was under a duty to use proper methods of cross-examination. However, having found clear and obvious error, we find that these questions nonetheless **did not** materially prejudice the substantial rights of appellant. Considering the overall record, the Government's evidence of guilt was overwhelming. Thus, the errors were harmless under the particular facts of this case.

### 2. Argument on Sentence

Appellant also alleges that the argument of trial counsel during sentencing focused primarily on general deterrence and was, therefore, improper. We disagree that the trial counsel's argument focused on this point. She discussed many appropriate reasons for punishing appellant. These included the impact appellant's actions had on his victims, his prior military record including past counseling entries, the amount of money that was taken, the shame and dishonor he brought on the Marine Corps, and his lack of remorse.

---

1. The Government correctly argues that *Richter,* as a Second Circuit Court of Appeals case is not binding on this court and that even the Second Circuit has consistently limited *Richter* to the facts of that case. We note that the Second Circuit, as well as the United States Supreme Court, reviews allegations of prosecutorial misconduct on a case by case basis, assessing the nature of the conduct and the overall impact of the conduct on appellant's substantial rights. *See United States v. Modica,* 663 F.2d 1173 (2d Cir.1981)(conduct was improper but not prejudicial), *Floyd v. Meachum, Commissioner of Correction,* 907 F.2d 347 (2d Cir.1990)(conduct was improper and prejudicial—equating lies with guilt in closing argument); *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)(improper, and undignified conduct but not prejudicial); and *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)(error to exhort jury to "do its job," but not prejudicial).

Record at 655–59. We find no error in trial counsel's argument on sentencing. *United States v. Lania*, 9 M.J. 100 (C.M.A.1980).

■ Appellant also argues that the trial counsel committed plain error by arguing for an increased punishment because he purportedly testified falsely. Had counsel done this we would agree that it was error. However, we find that trial counsel properly argued appellant's purported false testimony to show a lack of rehabilitative potential, which is allowable. *United States v. Warren*, 13 M.J. 278 (C.M.A.1982). Additionally, the military judge gave the members the appropriate mendacity instruction. Record at 668–69. Thus the members knew they could not award additional punishment to appellant for any purported false testimony.

### 3. Cumulative Error

■ Appellant cites as his fifth assignment of error the cumulative effect of the conduct of the trial counsel and the rulings of the military judge. He cites as improper conduct: the trial counsel's improper questioning of appellant; closing argument which commented on evidence appellant had prevented from being admitted, implying he was hiding evidence from the members; the question to appellant's co-actor which solicited a response that he received a 10–year sentence for his participation in the misconduct; and the alleged emphasis on general deterrence in her sentencing argument. Appellant claims the cumulative effect of these errors denied him a fair trial. We disagree. Although we did find error in the improper questioning by the trial counsel, we found no prejudice. As to her comment during the closing argument on the evidence that was not admitted, the military judge immediately stopped counsel and directed the members to disregard that comment. Record at 563. The military judge gave the same cautionary instruction when trial counsel asked the co-actor why he was in the brig.[2] Record at 224. We find that these actions by the trial counsel were improper, but they did not prejudice appellant or deny him a fair trial.

### II. Taking Exhibits Home During an Evening Recess

In his fourth assignment of error, appellant alleges that the military judge erred in allowing a member to take exhibits home during an evening recess. Appellant claims that this is a jurisdictional error. He claims that this allowed the member to deliberate without the required quorum of the court present and thus the court-martial was improperly constituted and jurisdiction terminated. We disagree. We find this to be a question of procedure under Rule for Courts-Martial 921, Manual for Courts-Martial, United States (1995 ed.) and not a jurisdictional issue. The requirements of Article 16(1), UCMJ, were met; the court was properly constituted. Because the defense raised no objection at trial, we have applied a plain error analysis.

■ The facts are not in dispute. At the end of one day's court session, a court member asked the military judge if it was permissible to take his notes home with him for the evening. The military judge replied in the affirmative, but said, "Again, this case is not over. The instruction that I gave you still applies. Do all members understand that?" Record at 538. The members replied in the affirmative. *Id.* Another member then asked if it was permissible to take copies of any of the evidence already admitted home as well. The military judge indicated that the member could do that. Record at 538. The military judge had properly instructed the members that they must keep an open mind until all of the evidence was presented and that they could not discuss the case with anyone until they were in their closed deliberative session. Record at 37–39, 71–74. Members are presumed to follow the instructions of the military judge. *United States v. Ricketts*, 1 M.J. 78 (C.M.A.1975). Appellant made no objection at trial to this procedure.

■ The members were instructed not to discuss the case and to keep an open mind until the end of the case. At the time of this evening recess, the case had not ended. Record at 538. The purpose of R.C.M. 921

---

**2.** Counsel's question to the co-actor was designed to obtain a response that he was serving a

10–year sentence for his participation in these events.

and the military judge's instructions is to insure that members do not discuss among themselves, or with others, the merits of the case until all of the evidence has been presented. There is no evidence in the record that any member did otherwise. For purposes of maintaining control over the court-martial proceedings, we discourage military judges from allowing members to take with them anything other than their own notes. However, applying the plain error analysis, we find no error and no prejudice to appellant in this case.

### III. Inappropriately Severe Sentence

■ In appellant's sixth assignment of error, he claims that his 15 years of confinement and his dishonorable discharge constitute an inappropriately severe sentence. A review of the charges and specifications to which appellant was convicted clearly demonstrates the seriousness of his misconduct. His actions adversely impacted all of those individuals whose checks he stole. For one of the victims, it took a year or more to receive his $16,000 separation check. Record at 641–42.

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). We are convinced that appellant received the individualized consideration to which he was entitled below. The members heard all of the evidence of record, weighed the interests involved, and decided upon an appropriate sentence after due deliberations. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982); RULE FOR COURTS-MARTIAL 1107(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). *See generally United States v. Spurlin*, 33 M.J. 443, 444 (C.M.A.1991). This assignment of error is without merit.

### IV. Cruel and Unusual Post-trial Punishment

In appellant's seventh assignment of error and his supplemental assignment of error he claims that he was subjected to cruel and unusual punishment due to the conditions of his confinement. He also claims that he was placed under these conditions because of his race. Because this cruel and unusual punishment is alleged to have occurred prior to the convening authority's action, we have exercised our broad discretionary powers to examine a court-martial sentence for legal error. *United States v. Valead*, 32 M.J. 122, 125 (C.M.A.1991);[3] *United States v. Lorance*, 35 M.J. 382 (C.M.A.1992). We reviewed the issue *de novo*. Having done so, we find no legal error.

■ Appellant claims to have been subjected to cruel and unusual punishment in violation of Article 55, UCMJ, and U.S. CONST. Amend. VIII. He claims he was made to stay in a small cell, with very limited recreation and visitation privileges. No dispute appears in the record as to the small size of his cell or the limitations placed on his privileges. Because the facts pertaining to the physical conditions of his confinement are uncontested, no further evidentiary hearing is required before we decide the legal issue. *United States v. Ginn*, 47 M.J. 236 (1997). We note that the conditions of these limitations are consistent with his classification as a maximum-security prisoner. We find no violation of Article 55, UCMJ, or U.S. CONST. AMEND. VIII in the conditions imposed on appellant.

■ Appellant also complains that he should not have been placed in maximum custody, even though as noted above, the conditions of which he complains are authorized for maximum-security prisoners and do not, by themselves, constitute cruel and unusual punishment. We note at the outset, that no prisoner has a legal entitlement to a particular custody classification. This court has not and will not participate in the day-to-day administration of confinement facilities. *See Bell v. Wolfish*, 441 U.S. 520, 540–41, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). We will

---

**3.** In *United States v. Valead*, 32 M.J. 122, 125 (C.M.A.1991), the then Court of Military Appeals affirmed our limited exercise of broad discretionary power to reassess a court-martial sentence for legal error and award meaningful relief. The facts of this case involved imposition of three days of bread and water at a special court-martial when appellant was not attached to a vessel at the time of the court-martial. We set aside the confinement on bread and water.

not "second guess" the administrative custody classification decisions assigned to a prisoner absent compelling reasons to do so.[4]

In his Supplemental Assignment of Error, appellant claims his classification was based on his race. We disagree. As the affidavits of Chief Warrant Officer–4 Spradley and Chief Warrant Officer–3 Mershon indicate, appellant was convicted of many serious, although non-violent, offenses. He received a lengthy sentence that he felt was undeserved. He did not accept responsibility for his actions. He was an escape risk based on these factors. His Hispanic heritage did not affect the viability of these other risk factors. We also note that the letter referred to by appellant was sent to the brig for his pretrial confinement hearing.[5] It was available to the brig during his initial pretrial confinement classification and it obviously did not affect that determination as appellant was initially classified as a medium custody detainee. Appellant's attachment. Thus his argument that this letter was the basis for his post-trial classification is not persuasive.

We also note that if appellant felt he was being treated unfairly or being discriminated against while at the Camp Pendleton Brig, he should have pursued an administrative remedy while at that facility. *United States v. Coffey*, 38 M.J. 290 (C.M.A.1993). Although appellant claims he did not do so on advice of counsel, we note that the local brig instruction submitted by appellant indicates that if the Classification and Assignment Board had deemed it appropriate, appellant could have personally appeared before the Classification and Assignment Board. This is a procedure for which he did not need counsel. Every confinement facility in the Navy and Marine Corps has counselors available to assist prisoners in utilizing the internal chain of command for administrative requests and redress of complaints. As the affidavit of Chief Warrant Officer–3 Mershon indicated, appellant utilized these procedures on many occasions. He failed to utilize these known procedures on an issue that should have been very important to him, i.e., the conditions of his confinement. We find appellant's assignments of error regarding the reasons and conditions of his confinement to be without merit.

## V. CONCLUSION[6]

Accordingly, we affirm the findings and sentence as approved below.

Senior Judge DORMAN and Senior Judge LEO concur.

---

4. The criteria outlined in the Department of the Navy Corrections Manual (Secretary of the Navy Instruction 1640.9B (2 Dec 1996)) controls these administrative decisions. Although at first glance it may seem unusual that the staff at the Camp Pendleton Brig never attempted a lower classification of appellant during the 412 days pending transfer to the United States Disciplinary Barracks, the affidavits and documents attached to the record indicate that the brig personnel appropriately reviewed the status of his confinement. Specifically, the Commanding Officer of the brig reviewed and approved the continuation of this status every 30 days as required by regulation. The Classification and Assignment Board met on 12 occasions to review appellant's classification status. Camp Pendleton Base Brig Conduct Record of Sgt Edward L. Jenkins, USMC, dated 2 Apr 1996 to 20 Nov 1997.

5. CWO3 Mershon's affidavit indicates that "a letter from [appellant's] Commanding Officer to the Initial Review Officer on 4Apr96 states that Prisoner Jenkins hispanic [sic] heritage would easily allow him to enter Mexico and disappear." Affidavit of CWO3 Lynn A. Mershon, USMC of 2 Nov 1998.

6. Appellant's eighth assignment of error has been considered. We find that it has no merit and does not warrant further discussion.