**UNITED STATES**

v.

**Gary L. SCALARONE, Lance Corporal
(E–3), U.S. Marine Corps.**

**NMCM 98 00227.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 17 July 1997.

Decided 13 Oct. 1999.

LCDR Rebecca L. Gilchrist, JAGC, USN, Appellate Defense Counsel.

LCDR Sandra L. Mulhair, JAGC, USNR, Appellate Defense Counsel.

LtCol Clark R. Fleming, USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, TROIDL and ROLPH, Appellate Military Judges.

DORMAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of conspiring to possess and distribute marijuana, and five specifications alleging various involvement with controlled substances, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a (1994). The appellant was sentenced to confinement for 25 years, forfeiture of all pay and allowances, reduction to pay grade E–1, a dishonorable discharge, and a fine of $5,000. A fine enforcement provision added an additional year of confinement if the appellant failed to pay the fine. In taking action on the case, the convening authority approved the sentence as adjudged. Confinement in excess of 8 years was suspended for 12 months from the date the appellant is released from confinement.[1]

We have carefully reviewed the record of trial, the appellant's five assignments of error, and the Government's response. Except as noted below, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

### Multiplicity

In his first assignment of error the appellant contends that his conviction for the pos-

---

1. The appellant's pretrial agreement required the convening authority to suspend all confinement in excess of 7 years for a period of 12 months from the date of the appellant's release from confinement. The convening authority added an additional year when the appellant did not pay the adjudged fine.

session of psilocybin mushrooms, with the intent to distribute them, is multiplicious with his conviction for the subsequent distribution of those same mushrooms. He makes the same argument with respect to a quantity of marijuana he possessed and eventually distributed. The appellant did not raise this issue at trial. In support of his argument, the appellant relies on *United States v. Wilson*, 45 M.J. 512, 513 (Army Ct.Crim.App. 1996). In response, the Government argues that the offenses are not multiplicious because each requires proof of separate elements. In support of its argument the Government relies on *United States v. Oatney*, 45 M.J. 185, 188–89 (1996), and *United States v. Teters*, 37 M.J. 370, 376 (C.M.A.1993). The Government also argues that the appellant forfeited this issue by his unconditional guilty plea without raising the issue at trial, citing *United States v. Lloyd*, 46 M.J. 19, 20 (1997).

***The Facts:*** During February 1997, the appellant left his duty station at Marine Corps Air Station [MCAS], Yuma, Arizona, and twice drove to San Francisco, California, to purchase psilocybin mushrooms. On the first trip he purchased 4 ounces of the mushrooms, and on the second trip he purchased a pound. After buying the mushrooms, he brought them back to MCAS Yuma and sold them to his co-conspirator, Lance Corporal [LCpl] Rosepiler. Prosecution Exhibit 1. On each occasion, the appellant purchased the mushrooms on his last day in San Francisco, and kept them for the length of time it took to drive back to MCAS Yuma and sell them to LCpl Rosepiler. Record at 29. This period of time was "a day, more or less, on each occasion." *Id.* Additionally, on each occasion that the appellant possessed the mushrooms he did so with the express intent to distribute all of them to LCpl Rosepiler. *Id.* at 30.

In addition to supplying LCpl Rosepiler with psilocybin mushrooms, the appellant entered into a conspiracy with him to distribute marijuana. In furtherance of the conspiracy, LCpl Rosepiler transported marijuana by car or truck from locations in Arizona to Tulsa, Oklahoma. LCpl Rosepiler made three trips between February and April 1997. Prosecu-

tion Exhibit 1. During the first two trips, the appellant was never in actual possession of the marijuana. On those occasions, the appellant put LCpl Rosepiler in contact with the Arizona suppliers of the marijuana. LCpl Rosepiler then transported the marijuana and delivered the entire shipment of marijuana to the appellant's contacts in Tulsa. The third transaction was different. The appellant actually possessed about 22 pounds of marijuana that he repackaged into a sea-bag. He then rented a car, placed the marijuana in the car, and then turned over the car to LCpl Rosepiler in Phoenix. LCpl Rosepiler was then to deliver the entire shipment to the appellant's contacts in Tulsa. Record at 24, 33–34.

■ We find that under the facts of this case, the appellant's convictions for the possession, with the intent to distribute, of both the marijuana and the mushrooms are multiplicious with his convictions for the distribution of those same controlled substances. We find the recent decision of our superior court in *United States v. Savage*, 50 M.J. 244 (1999) to be controlling. In *Savage* our superior court reiterated its earlier holding that "distribution of a controlled substance necessarily includes possession with intent to distribute." *Savage*, 50 M.J. at 245. In this case, where the appellant's possessions were with the intent to distribute the entire quantity of the controlled substances, specifically to LCpl Rosepiler, and where he subsequently made those distributions, the offenses are multiplicious. Furthermore, *Savage* also makes it clear that the appellant's failure to raise the issue at trial does not control this issue of constitutional dimension. To affirm the appellant's conviction of the specifications alleging possession of controlled substances with the intent to distribute them would violate the Double Jeopardy Clause of the Fifth Amendment. Accordingly, we will set aside those findings in our decretal paragraph.

### The Fine Enforcement Provision

■ When the military judge announced the appellant's sentence, he included a $5,000 fine. The military judge also stated that, "If said fine is not paid by 15 October 1997, you shall be confined for an additional period of

one year." [2] Record at 49. In addressing the terms of the pretrial agreement, the military judge also addressed the fine provision, concluding that the convening authority was free to approve the fine and its enforcement provision. The parties agreed with the military judge's interpretation. *Id.* at 51–52. The military judge, however, did not discuss on the record what the convening authority's obligations were under the pretrial agreement with respect to the fine enforcement provision. Had he done so, we probably would not be faced with this appellate issue.

In advising the convening authority of the impact of the pretrial agreement on the awarded sentence, the staff judge advocate, Colonel Davis, stated that the pretrial agreement required the suspension of confinement in excess of 7 years. He further advised, however, that the convening authority could add an additional year of confinement if the fine was not paid. In taking his action, the convening authority followed the advice of his staff judge advocate, suspending confinement in excess of 8 years, rather than the 7 years as required by the terms of the pretrial agreement.

In his second assignment of error the appellant argues that the convening authority erred when he suspended confinement in excess of 8 years, as opposed to the 7 years called for by the terms of the pretrial agreement. The Government concedes that this was error. We agree. *Tillman v. United States,* 32 M.J. 962 (A.C.M.R.1991); *cf. United States v. Hodges,* 22 M.J. 260 (C.M.A.1986)(holding that where a pretrial agreement places a ceiling on confinement, absent waiver of that ceiling by the accused, the ceiling may not be exceeded through the exercise of commutation powers). In taking his action, the convening authority could have added an additional year to the appellant's adjudged 25 years of confinement. He could not, however, add an additional year to the period of time the appellant would actually have to serve in confinement prior to being eligible to receive the benefits of his negotiated pretrial agreement. We will take corrective action in our decretal paragraph.

## Ineffectiveness of Counsel

In his next assignment of error, the appellant alleges that his trial defense counsel provided him with inadequate representation. Specifically, he alleges that his counsel failed to investigate the law concerning the issue of whether the convening authority could order suspension of confinement in excess of 8 years, rather than 7 years as required by the pretrial agreement. He also alleges ineffectiveness because his counsel allowed him to plead guilty to multiplicious charges. Finally, the appellant alleges that his counsel provided ineffective representation during the sentencing phase of the appellant's court-martial when he did not present any matters in extenuation and mitigation other than entries from the appellant's service record book and the appellant's unsworn statement. The Government argues that the appellant has not demonstrated that his counsel was ineffective. The Government further argues that the "suspension" issue can be resolved by this court, that the appellant did not plead guilty to multiplicious charges, and that appellant's counsel had tactical reasons for not presenting additional matters in extenuation and mitigation. We conclude that the appellant has not met his burden of demonstrating that he was denied effective representation.

In all cases where an accused faces trial by general or special court-martial, the accused is entitled to effective assistance of counsel. The accused is entitled to this representation throughout the entire military justice process. *See United States v. Russell,* 48 M.J. 139, 140 (1998); *United States v. Hicks,* 47 M.J. 90, 92 (1997); *United States v. Scott,* 24 M.J. 186, 187–88 (C.M.A.1987). In reviewing claims of ineffective assistance of counsel we apply a two-pronged test taken from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the appellant must demonstrate that his counsel's representation was at a level "below an objective standard of reasonableness."

---

2. The military judge erred in imposing a date for payment of the fine. When a fine is adjudged, it does not become due and payable until the convening authority takes action approving the fine.

Art. 57, UCMJ. Although the military judge erred in setting a payment due date, this error did not prejudice the appellant.

*Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. This objective standard requires that the appellant demonstrate that his counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* at 687. Next, the appellant must demonstrate prejudice by showing that his counsel's deficient performance resulted in an unfair trial, one whose results are not reliable. *Id.* In meeting this burden, an appellant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Furthermore, in reviewing such a claim, appellate courts normally will not second-guess the tactical decisions made by trial defense counsel. *Id.*; *United States v. Morgan,* 37 M.J. 407, 410 (C.M.A.1993); *United States v. Mahler,* 49 M.J. 558, 564 (N.M.Ct.Crim.App. 1998).

With respect to the issue of the legality of the convening authority's action in suspending confinement in excess of 8 years, and the issue of the multiplicious offenses, even if the appellant has met his burden under the first prong of *Strickland,* he can not meet the second prong. Because we have already resolved the underlying issues in the appellant's favor and by this decision will take action granting him relief, no prejudice remains concerning those issues.

 With regard to the issue of his counsel's effectiveness during the sentencing portion of the trial, the appellant has failed to meet his burden of proof. In an unrebutted post-trial affidavit, the appellant's trial defense counsel has detailed cogent tactical reasons for presenting a streamlined sentencing case. Included in that affidavit is counsel's assertion that he discussed this strategy with the appellant at the time of trial and that the appellant consented to the strategy. Additionally, the trial defense counsel notes that at trial the appellant was reluctant to make any statement during extenuation and mitigation. We will not second-guess appellant's trial defense counsel's tactical decisions in this case.

## Illegal Pretrial Punishment

In his fourth assignment of error, the appellant asserts that he was subjected to illegal pretrial punishment. He alleges that the conditions of his pretrial "detention were much more rigorous than the circumstances required to insure his presence for trial," and as such were in violation of Article 13, UCMJ. He requests that we award him 3–for–1 credit for each day in pretrial confinement or, in the alternative, that we order a *DuBay* hearing.[3] Appellant's Brief of 17 Dec. 1998 at 11–12. The Government argues that the conditions of the appellant's pretrial confinement were neither punitive nor more rigorous than necessary.

 We note the issue of illegal pretrial confinement was not raised at trial and is, thus, being raised for the first time on appeal. We find great merit in the argument that the appellant's failure to raise this issue before the military judge constituted waiver. *United States v. Huffman,* 40 M.J. 225, 228 (C.M.A.1994)(Crawford, J., dissenting in part and concurring in the result). Nevertheless, the 3–2 majority decision in that case binds us. Thus, in spite of appellant's failure to address the issue of illegal pretrial punishment while he was allegedly experiencing it, or at the very least at the time of trial, appellant may now raise this issue for our consideration and resolution. *Huffman,* 40 M.J. at 227. Since there was no evidentiary hearing, we must rely on the affidavits presented by both parties. Although the failure to raise this issue at trial does not bar this court from reviewing the conditions of his pretrial confinement, it is strong evidence that appellant has not been subjected to pretrial punishment. *Id.*; *United States v. Palmiter,* 20 M.J. 90, 97 (C.M.A.1985).

 In resolving the issue of whether the appellant has suffered a violation of Article 13, UCMJ, we must first determine whether the appellant has met the minimal requirements for raising the issue. To raise the issue, the burden is on the appellant to present evidence to support his claim of illegal pretrial punishment. Once an appellant successfully does that, the burden then shifts

---

**3.** *United States v. DuBay,* 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

to the Government to present evidence to rebut the allegation "beyond the point of . . . inconclusiveness." *United States v. Cordova*, 42 C.M.R 466, 1970 WL 7132 (A.C.M.R.1970). In evaluating whether the appellant has sufficiently met his burden of proof, we will accept the appellant's post-trial affidavit as true.

■■■ Our review of the evidence reveals the following. The appellant was placed in pretrial confinement in Yuma, Arizona, on 21 April 1997,[4] for violations of Articles 81 and 112a, UCMJ. Affidavit of GySgt Waliszewski of 8 Apr. 1999 at 1. He remained in pretrial confinement until his trial, which occurred on 17 July 1997. His initial custody classification was "Medium, In Custody." *Id.* This meant that he could not work outside the facility. He was also required to have immediate supervision at all times, to wear restraints outside the security perimeter, and to have two escorts outside the perimeter. He was assigned to "Special Quarters," rather than the "dorm" cells, because of the seriousness of his charges and the possibility of escape. *Id.* He remained in "Special Quarters" for 87 days. Record at 43. While in pretrial confinement, *as a matter of policy*, the appellant was not authorized phone calls or visits. Affidavit of Appellant of 1 Dec. 1998; Brig Officer letter of 23 Apr. 1997. The logs kept in the Brig, however, indicate that the appellant may have made or received three phone calls and had a total of nine visits. The trial defense counsel made five of these visits, and another was for "legal matters." One was a visit by a representative of the appellant's command. The visitor log does not indicate the purpose of the other two visits. Government Motion to Attach of 14 May 1999, Visitation Log. The appellant was also told that he was in medium custody because he was considered a flight risk based on the length of the sentence he could receive. Affidavit of Appellant of 1 Dec. 1998.

While in "Special Quarters" the appellant was segregated from other prisoners and housed in a smaller cell for over 23 hours a day, Monday through Friday. He was allowed out of his cell for 15 minutes a day for recreation. When taken out of his cell he was placed in leg and hand restraints. Based upon the evidence presented by the appellant, he has met his relatively low burden of proof.

In response, the Government produced an affidavit from Gunnery Sergeant Waliszewski, the detention facilities supervisor of the Yuma Brig. Additionally, the Government produced the Brig's Special Handling Instructions for the appellant, a phone log, and a visitation log. We find that those documents generally corroborate the allegations made by the appellant. Of particular concern are the restrictions on phone calls and visitation placed upon the appellant by the Special Handling Instructions, and the emphasis placed on the appellant being an escape risk as a basis for his classification. *See United States v. Anderson*, 49 M.J. 575 (N.M.Ct.Crim.App.1998).

Article 13, UCMJ, prohibits the intentional imposition of pretrial punishment, and also the imposition of restrictions on liberty which exceed that needed to ensure an accused's presence for trial. *United States v. McCarthy*, 47 M.J. 162 (1997). We find no evidence of record of intent to punish the appellant by placing him in "Special Quarters." We are always hesitant to second-guess administrative classifications. *See United States v. Jenkins*, 50 M.J. 577 (N.M.Ct.Crim.App.1999). In this case, however, we find that the combination of the appellant's Special Handling Instructions and the focus on the possibility of the appellant's escape due to the seriousness of the charges, as the reasons to assign him to "Special Quarters," resulted in the imposition of conditions more rigorous than necessary to ensure his presence for trial. *See Anderson*, 49 M.J. at 576. We will grant relief in our decretal paragraph.

### Illegal Post Trial Confinement

■■■ In his final assignment of error, the appellant asserts that the conditions of his confinement since his conviction violate both

---

4. In his brief, the appellant reasserts the claim contained in his affidavit, that his confinement began on 20 April 1997. Appellant's Brief of 17 Dec. 1998 at 10. At trial, the appellant did not contest the 21 April 1997 inception date of his pretrial confinement, as listed on page 1 of the Charge Sheet.

the Eighth Amendment to the Constitution and Article 55, UCMJ. Specifically, the appellant contends that: his cell was too small; he was shackled when he was out of his cell until his classification was upgraded to "Medium Inside Only" [MDISO]; he was refused medication and access to legal materials; his cell was too hot in the summer and too cold in the winter; and that conditions did not improve when he was transferred to the Disciplinary Barracks at Fort Leavenworth because he was not issued a sweater when he was transferred there. Affidavit of Appellant of 1 Dec. 1998. The Government asserts that we do not have jurisdiction to address the appellant's allegations. Additionally, based in part upon an affidavit from Chief Warrant Officer–3 Mershon, the Brig Officer at Camp Pendleton, the Government argues that the conditions of the appellant's post-trial confinement do not violate either the Eighth Amendment or Article 55, UCMJ.

*The Facts.* The appellant was transferred to the Brig at Camp Pendleton, California, on 22 July 1997, and was initially classified as a maximum custody prisoner. The very next day he was reclassified as an MDISO, but he remained in "Special Quarters." His cell was 6–feet wide, 8–feet long and 8–feet high. The cell was furnished with a bed, a pillow and linens, a sink with hot and cold water, a toilet, and a wall locker. These facilities complied with the applicable Instructions of the Secretary of the Navy Instruction 1640.98 (2 Dec. 1996). While classified MDISO, the appellant was allowed outside without physical restraints in a recreation area for one hour per day, Monday through Friday. The appellant did not inform Brig officials that he had been denied medication. Affidavit of CWO3 Mershon of 21 Apr. 1999. The appellant was transferred to Fort Leavenworth on 2 February 1998. Affidavit of Appellant of 1 Dec. 1998.

*Discussion.* The Government asserts that this court does not have jurisdiction to review the conditions of appellant's post-trial confinement. However, because cruel and unusual punishment is alleged to have occurred prior to the convening authority's action, we have exercised our broad discretionary powers to examine the claim for legal error. *United States v. Lorance,* 35 M.J. 382 (C.M.A.1992); *United States v. Valead,* 32 M.J. 122, 125 (C.M.A.1991);[5] *United States v. Jenkins,* 50 M.J. 577 (N.M.Ct.Crim.App. 1999). Having done so, we find no legal error.

We find that the appellant has asserted no conditions that appear to be "cruel or unusual" in his post-trial confinement. His assertion that full shackles were used to move him to the recreation room fails under closer examination. He asserts that these conditions continued until he was upgraded MDISO. That upgrade, however, occurred the day after he arrived at the Camp Pendleton Brig. We find no conditions outlined by the appellant that rise to the level of a violation of the Eighth Amendment or of Article 55, UCMJ. This assignment of error is without merit.

## Conclusion

We set aside the appellant's conviction of specification 1 of Charge II as a lesser-included offense of specification 3 of Charge II. We also set aside specification 4 of Charge II as a lesser-included offense of specification 5 of Charge II. Specifications 1 and 4 of Charge II are dismissed. All other findings are affirmed.

As a result of our action on the findings, we have reassessed the sentence in accordance with the principles of *United States v. Cook,* 48 M.J. 434 (1998), *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A.1986). Upon reassessment, we approve only so much of the sentence as extends to confinement for 21 years, forfeiture of all pay and allowances, reduction to paygrade E–1, and a dishonorable discharge. As a result of our determination that conditions of the appellant's pretrial confinement exceeded those required to ensure the appel-

5. In *United States v. Valead,* 32 M.J. 122, 125 (C.M.A.1991), the Court of Military Appeals affirmed our limited exercise of broad discretionary power to reassess a court-martial sentence for legal error and award meaningful relief. The facts of that case involved an accused who had been awarded three days of bread and water at a special court-martial when he was not attached to a vessel at the time of the court-martial. We set aside the confinement on bread and water.

lant's presence for trial, we award an additional 87 days of credit towards his sentence to confinement. A new promulgating order, reflecting the findings and sentence as modified by this decision and the term of the pretrial agreement, shall be issued.