UNITED STATES, Appellant,

v.

Gary L. SCALARONE, Lance Corporal,
U.S. Marine Corps, Appellee.

No. 00–5001.
Crim.App. No. 98–0227.

U.S. Court of Appeals for
the Armed Forces.

Argued March 1, 2000.

Decided Sept. 11, 2000.

Cox, Senior Judge, filed concurring opinion.

Gierke, J., filed opinion concurring in the result.

Crawford, Chief Judge, filed dissenting opinion.

SULLIVAN, J., delivered the opinion of the Court, in which EFFRON, J., and COX, S.J., joined. COX, S.J., filed a concurring opinion. GIERKE, J., filed an opinion concurring in the result. CRAWFORD, C.J., filed a dissenting opinion.

For Appellant: *Lieutenant William C. Minick,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief).

For The Accused: *Lieutenant Command-er Michael J. Wentworth,* JAGC, USN (argued).

Judge SULLIVAN delivered the opinion of the Court.

On July 17, 1997, the accused was tried by a general court-martial composed of a military judge sitting alone at Marine Corps Air Station, Yuma, Arizona. Pursuant to his pleas, he was found guilty of conspiring to possess and distribute marijuana and 5 specifications of introduction, possession, and distribution of various controlled substances, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912(a). He was sentenced to a dishonorable discharge, confinement for 25 years, a fine of $5,000, total forfeitures, and reduction to E–1. A fine enforcement provision provided for an additional year of confinement if the accused failed to pay the adjudged fine.

On December 23, 1997, the convening authority approved the sentence as adjudged. Pursuant to a pretrial agreement, however, he suspended confinement in excess of 8 years for a period of 12 months from the date on which the accused is released from confinement. On October 13, 1999, the Court of Criminal Appeals set aside specification 1 of Charge II (possession of psilocybin mushrooms, a controlled substance) as a lesser-included offense of specification 3 of Charge II (distribution of same substance) and set aside specification 4 of Charge II (possession of marijuana) as a lesser-included offense of specification 5 of Charge II (distribution of marijuana) but otherwise affirmed the findings. It reassessed the sentence, approving a dishonorable discharge, confinement for 21 years, total forfeitures, and reduction to E–1. The Court of Criminal Appeals also awarded the accused an additional 87 days of credit towards his sentence of confinement because it determined that he was subjected to illegal pretrial punishment. *United States v. Scalarone,* 52 MJ 539, 545–46 (N.M.Ct.Crim. App.1999).

On November 12, 1999, the Judge Advocate General of the Navy certified the following issue for review:

WHETHER *UNITED STATES V. HUFFMAN,* 40 MJ 225 (CMA 1994), WHICH HELD THAT AN ACCUSED'S FAILURE TO RAISE THE ISSUE OF ILLEGAL PRETRIAL CONFINEMENT AT TRIAL DOES NOT PRECLUDE HIM FROM RAISING THE ISSUE ON APPEAL, SHOULD BE OVERRULED.

We hold that the Court of Criminal Appeals properly followed the decision of this Court in *United States v. Huffman, supra.* See *United States v. Allbery,* 44 MJ 226, 227–28 (1996); *United States v. Jones,* 23 MJ 301 (CMA 1987). Furthermore, we decline the invitation of the Judge Advocate General of the Navy to overrule *Huffman.* See *United States v. Tualla,* 52 MJ 228, 231 (2000); *cf. United States v. Carter,* 25 MJ 471, 473 (CMA 1988).

The Court of Criminal Appeals detailed the facts of this case with respect to the accused's post-trial claim that he was unlawfully punished while in pretrial confinement:

The appellant was placed in pretrial confinement in Yuma, Arizona, on 21 April 1997, for violations of Articles 81 and 112a, UCMJ, 10 USC §§ 881 and 912a. Affidavit of GySgt Waliszewski of 8 Apr. 1999 at 1. He remained in pretrial confinement until his trial, which occurred on 17 July 1997. His initial custody classification was "Medium, In Custody." *Id.* This meant that he could not work outside of the facility. He was also required to have immediate supervision at all times, to wear restraints outside the security perimeter, and to have two escorts outside the perimeter. He was assigned to "Special Quarters," rather than the "dorm" cells, because of the seriousness of his charges and the possibility of escape. *Id.* He remained in "Special Quarters" for 87 days. Record at 43. While in pretrial confinement, *as a matter of policy,* the appellant was not authorized phone calls or visits. Affidavit of Appellant of 1 Dec. 1998; Brig Officer letter of 23 Apr. 1997. The logs kept in the Brig, however, indicate that the appellant may have made or received three phone calls and had a total of nine visits. The trial defense counsel made five of

these visits, and another was for "legal matters." One was a visit by a representative of the appellant's command. The visitor log does not indicate the purpose of the other two visits. Government Motion to Attach of 14 May 1999, Visitation Log. The appellant was also told that he was in medium custody because he was considered a flight risk based on the length of the sentence he could receive. Affidavit of Appellant of 1 Dec. 1998.

While in "Special Quarters" the appellant was segregated from other prisoners and housed in a smaller cell for over 23 hours a day, Monday through Friday. He was allowed out of his cell for 15 minutes a day for recreation. When taken out of his cell, he was placed in leg and hand restraints. Based upon the evidence presented by the appellant, he has met his relatively low burden of proof.

In response, the Government produced an affidavit from Gunnery Sergeant Waliszewski, the detention facilities supervisor of the Yuma Brig. Additionally, the Government produced the Brig's Special Handling Instructions for the appellant, a phone log, and a visitation log. We find that those documents generally corroborate the allegations made by the appellant. Of particular concern are the restrictions on phone calls and visitation placed upon the appellant by the Special Handling Instructions, and the emphasis placed on the appellant being an escape risk as a basis for his classification. *See United States v. Anderson*, 49 MJ 575 (N.M.Ct.Crim.App. 1998).

*Id.* at 544 (footnote omitted).

The appellate court below awarded 87 days credit towards appellant's sentence. It stated:

Article 13, UCMJ, 10 USC § 813, prohibits the intentional imposition of pretrial punishment, and also the imposition of restrictions on liberty which exceed that needed to ensure an accused's presence for trial. *United States v. McCarthy*, 47 MJ 162 (1997). We find no evidence of record of intent to punish the appellant by placing him in "Special Quarters." We are always hesitant to second-guess administrative classifications. *See United States v. Jenkins*, 50 MJ 577 (N.M.Ct.Crim.App.1999). In this case, however, we find that the combination of the appellant's Special Handling Instructions and the focus on the possibility of the appellant's escape due to the seriousness of the charges, as the reasons to assign him to "Special Quarters," resulted in the imposition of conditions more rigorous than necessary to ensure his presence for trial. *See Anderson*, 49 MJ at 576. We will grant relief in our decretal paragraph.

*Id.*

The Court of Criminal Appeals, however, acted quite reluctantly. It stated that it was compelled by our decision in *United States v. Huffman, supra*, to entertain the accused's request for sentence credit made for the first time on appeal. It said:

We note the issue of illegal pretrial confinement was not raised at trial and is, thus, being raised for the first time on appeal. We find great merit in the argument that the appellant's failure to raise this issue before the military judge constituted waiver. *United States v. Huffman*, 40 MJ 225, 228 (CMA 1994) (Crawford, J., dissenting in part and concurring in the result). Nevertheless, the 3–2 majority decision in that case binds us. Thus, in spite of appellant's failure to address the issue of illegal pretrial punishment while he was allegedly experiencing it, or at the very least at the time of trial, appellant may now raise this issue for our consideration and resolution. *Huffman*, 40 MJ at 227. Since there was no evidentiary hearing, we must rely on the affidavits presented by both parties. Although the failure to raise this issue at trial does not bar this court from reviewing the conditions of his pretrial confinement, it is strong evidence that appellant has not been subjected to pretrial punishment. *Id.; United States v. Palmiter*, 20 MJ 90, 97 (CMA 1985).

52 MJ at 543. The Judge Advocate General asks whether the decision of this Court in *United States v. Huffman* should be overruled and, by implication, that the previously awarded credit be set aside.

■ We initially note that Article 67(a)(2), UCMJ, 10 USC § 867(a)(2), states that "[t]he Court of Appeals for the Armed Forces shall review the record in ... all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review...." *See generally United States v. Armbruster,* 11 USCMA 596, 29 CMR 412 (1960). In this case, a question is raised concerning the propriety of the lower appellate court's holding that it must follow our Court's decision in *United States v. Huffman, supra.* Neither the Supreme Court nor this Court has overruled our decision, nor has there been any other subsequent change in the law affecting it.[1] Accordingly, we hold that the Court of Criminal Appeals did not err in following our decision. *See United States v. Allbery, supra; United States v. Jones, supra.*

■ Moreover, the Government has not persuaded us that *United States v. Huffman* should now be overruled. *See* Robert M. Mummey, *Judicial Limitations Upon a Statutory Right: The Power of the Judge Advocate General to Certify under Article 67(b)(2),* 12 Mil. L.Rev. 193, 217 (1961) (any specified question of law raised in case). Judge Effron, writing for a majority of this Court in *United States v. Tualla,* 52 MJ at 231, explained the heightened requirements for overruling our precedent:

> When considering whether to overrule a precedent, we are guided by the doctrine of *stare decisis.* Under this fundamental principle, adherence to precedent "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

*Stare decisis* is a principle of decision making, not a rule, and need not be applied when the precedent at issue is "unworkable or ... badly reasoned." *Id.* As a general matter, however, "[a]dhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'" *Id.* (quoting *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)).

We reject the Government's suggestions that *United States v. Huffman, supra,* is "unworkable" (*see United States v. Ginn,* 47 MJ 236 (1997) (establishing workable procedure for addressing certain legal claims raised for first time on appeal)) or "badly reasoned." *See also New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 664, 145 L.Ed.2d 560 (2000) ("For certain fundamental rights, the defendant [not his counsel] must personally make an informed waiver."). On the contrary, it is entirely consistent with the longstanding precedent of this Court. *United States v. Johnson,* 19 USCMA 49, 41 CMR 49 (1969); *see generally* Homer E. Moyer, Jr., *Justice and the Military* §§ 2–355 to 2–360 at 411–14 (1972). Accordingly, we decline the invitation to overrule our prior decision. *Cf. United States v. Carter,* 25 MJ at 477. The certified issue is answered in the negative.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

COX, Senior Judge (concurring):

I concur in Judge Sullivan's opinion.

I am an admitted "paternalist." A paternalist treats others as a father would his child. As such, I am unable to ignore the dissent of our Chief Judge.

Chief Judge Crawford's dissent, which comes as no surprise given her dissent in *Huffman,* appears to be based upon the no-

---

1. Contrary to the suggestion of the dissent, the *Manual for Courts–Martial* did not and does not now provide that the failure to request (during a sentencing proceeding of a court-martial) sentence credit for unlawful pretrial punishment or illegal pretrial confinement forfeits such a claim in the absence of plain error or waives such a claim forever. *See* RCM 305(j)(2) and (k), 801(g), 905(e), and 907(b)(2).

tion that the accused is bound by the conduct of his attorney, who did not pursue the question of pretrial punishment at trial. *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 666, 145 L.Ed.2d 560 (2000). "[T]he defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."'" *Id.* at 664. I certainly take no quarrel with this proposition of law. Indeed, a trial could hardly be conducted without such a doctrine.

Nevertheless, it seems only logical to me that a defendant cannot be bound by facts **NOT KNOWN TO EITHER HIM OR HIS LAWYER.** Thus, in the context of this case, it is of no moment whether Chief Judge Crawford is philosophically right or wrong regarding the underlying question in *Huffman*, that is, does a servicemember forfeit rights conferred upon him by the Uniform Code of Military Justice by not raising them at trial? No one has ever suggested that an accused cannot waive many of his rights before, during, or after a trial.

No one disputes her premise that it is far better to litigate these issues at trial rather than raise the issues for the first time on appeal. Indeed, military judges should routinely inquire about matters such as pretrial confinement, pretrial punishment, or the like prior to adjourning a court-martial. I cannot think of a single sentence that I imposed as a trial judge where I did not inquire of the defendant or his attorney whether the defendant was entitled to any administrative credits as a result of pretrial matters.

*New York v. Hill*, however, is not a forfeiture case. It is a waiver case. Every dictionary that I have consulted, including the legendary Blacks Law Dictionary, has defined waiver as "intentionally relinquishing or abandoning a known right." Merriam Webster's Collegiate Dictionary 1328 (10th ed.1998). Even if an attorney is authorized under the *New York v. Hill* decision to waive an appellant's right to credit for pretrial confinement or pretrial punishment, the attorney must know what it is that he or she is waiving. There is no evidence of that in this case. Indeed, if the attorney did know that

the accused had suffered pretrial punishment and "waived" the issue, then that is incompetence of counsel per se.

The bottom line is that even if one agrees with her apparently heart-felt philosophy that a servicemember "waives" important statutory rights because his or her military attorney did not raise them at trial, her reliance on *New York v. Hill* is inappropriate here. There is simply no evidence before this Court that either the attorney or the accused knew or should have known that the pretrial confinement imposed upon the accused violated Article 13, UCMJ, 10 USC § 813. The conditions imposed upon the accused were standard practice in the pretrial confinement facility, and it was not until the Navy–Marine Corps Court of Criminal Appeals concluded that the practice violated Article 13 that the issue become known.

Lastly, let me make it clear, I may be a "paternalist," but after over 36 years of involvement with military justice and 22 years on the bench as a trial and appellate judge, I have witnessed for myself the experience level of the young military attorneys who represent our nation's men and women. Notwithstanding the fact that, in the main, these young attorneys are zealous, conscientious, and try hard to fully represent their clients, they do not always get it right. Someone, somewhere, has to step in and insure that each servicemember is afforded the protections that Congress intended they have. It saddens me that the Chief Judge of this Court, the Judge Advocate General of the Navy, and many trial and appellate judges are quick to find "waiver" or some other legal theory to deny a servicemember relief if it is due.

GIERKE, Judge (concurring in the result):

I disagree with this Court's decision in *United States v. Huffman*, 40 MJ 225 (CMA 1994), for the reasons set out in Chief Judge Crawford's separate opinion in that case, which I joined. Therefore, I would answer the certified question in the affirmative.

Nevertheless, the court below was obligated to follow this Court's decision in *Huffman*, and appellant was entitled to the benefit of it.

*United States v. Allbery,* 44 MJ 226, 228 (1996). Accordingly, I join the majority in affirming the decision of the court below.

CRAWFORD, Chief Judge (dissenting):

The majority continues to swim in a sea of paternalism. It overlooks the fact that we are bound by the President's rules, unless they are unconstitutional. *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). At oral argument, the Government stated the accused deserved no credit and the decision below should be reversed. I agree.

The Manual expressly provides that the failure to make a motion for appropriate relief before the court-martial is adjourned constitutes a waiver absent good cause shown for not making the motion. RCM 905(e), Manual for Courts–Martial, United States (1998 ed.); *see also* RCM 907(b)(2)(D)(iv). As we said in *United States v. Huffman,* 40 MJ 225, 229 (CMA 1994):

> The purpose of these so-called "raise-or-waive" Manual Rules are to eliminate the expense to the parties and the public of rehearing an issue that could have been dealt with by a timely objection or motion at trial.

Recently, the Supreme Court unanimously rejected the requirement for an affirmative waiver under the Interstate Agreement on Detainers. *New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 666, 145 L.Ed.2d 560 (2000). The Court noted:

> For certain fundamental rights, the defendant must personally make an informed waiver .... (right to counsel) ... (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel. "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." ... As to many decisions pertaining to the conduct of the trial, the defendant is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged

upon the attorney.'" ... Thus, decisions by counsel are generally given effect as to what arguments to pursue, ... and what agreements to conclude regarding the admission of evidence.... Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.

*Id.* at 664 (citations omitted).

Except for *Huffman,* it would seem that the failure to make the motion in this case is the "last word" absent a claim of ineffectiveness. *Id.*

*Huffman* is unworkable, and the impact on the system can now be seen. Since the *Huffman* decision, we have had numerous cases where the issue has not been raised before the court-martial is adjourned. *United States v. Yunk,* 53 MJ 145 (2000); *United States v. Smith,* 53 MJ 168 (2000); *United States v. Starr,* 53 MJ 380 (2000); *United States v. Avila,* 53 MJ 99 (2000); *United States v. Southwick,* 53 MJ 412 (2000); *cf. United States v. Fricke,* 53 MJ 149 (2000). The astute lawyer realizes that his or her client may be entitled to more relief after appellate review because witnesses move and facts are forgotten. However, this approach does not serve their clients nor the military justice system.

The military justice system provides for an extensive review of pretrial restraint. Foremost, the military accused is entitled "to retain civilian counsel at no expense to the United States, and the right to request assignment of military counsel" "within 72 hours of" confinement. RCM 305(e) and (f). Trial defense counsel are expected to be active advocates for their clients in pretrial confinement determinations and throughout the duration of pretrial confinement. Additionally, there are a number of safeguards in place: the 48–hour probable cause review, *United States v. Rexroat,* 38 MJ 292 (CMA 1993); the 72–hour commander's review, RCM 305(h)(2); the 7–day neutral and detached officer's review, RCM 305(i)(1) & (2); and the military judge's review, RCM 305(j).

I can support neither circumvention of these safeguards nor the avoidance of the waiver rules. Therefore, I dissent.