UNITED STATES, Appellee,

v.

Private E2 Kyle KINSCH, United States Army, Appellant.

ARMY 9900250.

U.S. Army Court of Criminal Appeals.

27 Oct. 2000.

---

For Appellant: Captain Steven P. Haight, JA (argued); Colonel Adele H. Odegard, JA; Major Scott R. Morris, JA; Major Kirsten V.C. Brunson, JA; Captain Blair T. O'Connor, JA (on brief); Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA; Captain David S. Hurt, JA.

For Appellee: Captain Paul T. Cygnarowicz, JA (argued); Lieutenant Colonel Edith M. Rob, JA; Major Patricia A. Ham, JA; Captain Kelly D. Haywood, JA (on brief); Colonel David L. Hayden, JA; Major Anthony P. Nicastro, JA.

Before TOOMEY, Senior Judge, CARTER, and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

TOOMEY, Senior Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of conspiring to distribute controlled substances, wrongful use of controlled substances (two specifications), wrongful in-

troduction of controlled substances onto a military installation, wrongful distribution of controlled substances (two specifications), and wrongful possession of controlled substances, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for seven months, forfeiture of all pay and allowances, and reduction to Private E1.

This case is before the court for automatic review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. In addition to the parties' briefs, we have considered matters presented in oral argument, and, as requested personally by appellant, the matters contained in appellant's post-trial submission to the convening authority.

## STATEMENT OF THE CASE

Appellant asserts that while he was serving a portion of his sentence to confinement at the United States Army Confinement Facility, Europe (USACFE), located in Mannheim, Germany,[1] a confinement facility guard subjected him to several unlawful physical assaults which constituted cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution [hereinafter Eighth Amendment] and Article 55, UCMJ, 10 U.S.C. § 855.[2] Appellant asserts in his affidavit that inmates passing through a metal detector upon leaving the dining facility would continually set the metal detector off despite the absence of contraband. When the metal detector alarm sounded, one guard in particular would strike inmates in the testicles as part of his frisk procedure. Appellant asserts that he was struck in the testicles "several times."

Appellant submitted on appeal ten affidavits from other appellants[3] who were confined at the USACFE during the period December 1998 to February 2000. A number of the affiants assert that the sensitivity level of the metal detector was set at such a low level that the small amount of metal in the inmates' boot eyelets was sufficient to sound the alarm. They further assert that more than one guard used the pretense of the metal detector alarm to conduct body frisks that frequently included "karate chops" to inmates' testicles resulting in significant physical pain and suffering. Appellant, as well as other affiants, assert that the guards' conduct was so rough and frequent that the victims doubled over in pain from the strikes to the testicles and suffered mental anguish at the prospect of going to the dining facility and facing the guards' abusive frisks upon leaving.

Multiple affiants state that the sergeant of the guard or other superiors witnessed the guards strike the inmates' testicles and saw the inmates' painful reactions. Only one affiant asserts that he personally filed a complaint with the USACFE hierarchy and the Inspector General. That affiant does not state when those complaints were filed. Appellant and many of the other affiants assert that they failed to complain about the frisks because of fear of retribution and because of a perceived attitude of indifference by the USACFE chain of command.

---

1. Appellant remained in post-trial confinement at the USACFE from 5 March 1999 to about 25 May 1999 awaiting the following: the preparation and authentication of his record of trial; the preparation of the Staff Judge Advocate's Recommendation (Rule for Courts–Martial 1106 [hereinafter R.C.M.]); the preparation of the appellant's response thereto and the submission of appellant's clemency package (R.C.M. 1105); and the action by the convening authority (R.C.M. 1107) which was taken on 13 May 1999.

2. Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment, but differ slightly in their prohibitions. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article 55, UCMJ, states: "Punishment by flogging, or by branding, marking, or tattooing on the body, or any other cruel or unusual punishment, may not be adjudged by a court-martial or inflicted upon any person subject to this chapter. The use of irons, single or double, except for the purpose of safe custody, is prohibited."

3. *Keesey*, ARMY 9900403; *Benner*, ARMY 9801777; *Tarbox*, ARMY 9900180; *Gronewald*, ARMY 9900254; *Ellis*, ARMY 9900621; *Garza*, ARMY 9900700; *Mizzles*, ARMY 9900601; *Hale*, ARMY 9900269; *Emminger*, ARMY 9900428; *Faulkner*, ARMY 9900432.

Appellant raises the issue of cruel and unusual punishment for the first time on appeal. Appellant filed no complaints with the USACFE commander or others concerning the alleged assaults during his USACFE confinement and did not raise the matter in his post-trial submissions to the convening authority. Appellant asserts that he is entitled to unspecified "meaningful relief" from this court. In oral argument, appellant's counsel defined "meaningful relief" as an affirmed sentence of no punishment.

The government asserts that this court lacks jurisdiction to consider this matter under Article 66(c), UCMJ, and *Clinton v. Goldsmith*, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). The government further asserts that by failing to raise the matter while confined at the USACFE, appellant failed to exhaust his administrative remedies and effectively forfeited his complaint.[4] The government's position concerning the alleged assaults may be summarized as follows: (1) because the government had a legitimate purpose to identify contraband by "pat downs," any guard/inmate contact that did occur was related to a legitimate correctional purpose; (2) there is no showing that the confinement facility acted with deliberate indifference to appellant's condition; (3) appellant's failure to complain or to seek medical treatment at the time of the alleged assaults prohibited the timely collection of evidence and impeaches the validity of his claim; (4) even if such assaults did occur, the alleged injury is insufficiently serious to warrant relief under Article 55, UCMJ, or the Eighth Amendment; and (5) appellant's untimely complaint leaves this court without an "appropriate remedy ."

The government has not submitted for this court's consideration any statements, affidavits, or records of government investigations countering the assertions of appellant and the other affiants.[5] In oral argument, the government stated that it had not sought responses to, or an investigation of, the inmates' allegations of cruel and unusual punishment and did not desire a *DuBay*[6] hearing to further develop the facts.

This court holds that it has jurisdiction to consider this matter, that the guards' conduct constituted cruel and unusual punishment, and that appellant's failure to complain in a timely manner impacts the degree of, but not the right to or appropriateness of, a remedy. We grant relief in our decretal paragraph.

## STANDARD OF REVIEW

■ Allegations of post-trial cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, are reviewed *de novo*. See *United States v. Sanchez*, 53 M.J. 393 (2000).

## JURISDICTION

■ The government asserts that the United States Supreme Court's decision in *Goldsmith* precludes this court from exercising jurisdiction in the instant case.[7] In *Goldsmith*, the Supreme Court held:

4. The government cites *United States v. Avila*, 53 M.J. 99 (2000), *United States v. Miller*, 46 M.J. 248 (1997), and *United States v. Coffey*, 38 M.J. 290 (C.M.A.1993), to support this assertion.

5. Appellant's brief was filed 3 November 1999, and the government's brief was filed 27 June 2000. Thereafter, appellant requested oral argument on 5 July 2000, and oral argument was heard on 25 September 2000. On 4 October 2000, government appellate counsel requested that the Department of the Army Inspector General provide copies of any records pertaining to the investigation into the alleged maltreatment of inmates by USACFE guards. On 11 October 2000, a legal advisor at the Office of the Inspector General advised government appellate counsel that the investigation was ongoing and that the records pertaining to the investigation would

not be released. Government appellate counsel invites this court, should it find this information pertinent, to order the Inspector General to provide copies of its records pertaining to the investigation for an *in camera* review. We decline this invitation. The government has had almost a year to perfect its case and has failed to do so.

6. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

7. In *Goldsmith*, an extraordinary writ action, our superior court asserted jurisdiction over a challenge to a service's *administrative action* which adversely impacted the petitioner. At the time the extraordinary writ was filed, appellate review of the petitioner's case had been completed, and the petitioner's appeal was final.

Because the court's process was neither "in aid of" its strictly circumscribed jurisdiction to review court-martial findings and sentences under 10 U.S.C. § 867 nor "necessary or appropriate" in light of a service member's alternative opportunities to seek relief, we hold that the Court of Appeals for the Armed Forces lacked jurisdiction to issue the injunction. *Goldsmith*, 526 U.S. at 531, 119 S.Ct. 1538. The government argues that, under *Goldsmith*, because cruel and unusual punishments are not part of the adjudged/approved sentence, they are collateral matters outside of our jurisdiction as defined by Article 66(c), UCMJ. We disagree.

The United States Court of Appeals for the Armed Forces and the service courts of criminal appeals have exercised jurisdiction over Eighth Amendment and Article 55, UCMJ, cruel and unusual punishment claims. *See Avila*, 53 M.J. at 101; *United States v. Wappler*, 2 U.S.C.M.A. 393, 9 C.M.R. 23, 1953 WL 2598 (1953); *United States v. Ouimette*, 52 M.J. 691 (C.G.Ct. Crim.App.2000); *United States v. Scalarone*, 52 M.J. 539 (N.M.Ct.Crim.App.1999), *aff'd*, 54 M.J. 114 (2000); *United States v. Martinez*, 19 M.J. 744 (A.C.M.R.1984); *United States v. Zachery*, 6 C.M.R. 833, 1952 WL 2483 (A.F.B.R.1952). Most recently in *Sanchez*, 53 M.J. at 395–98, our superior court implicitly reaffirmed the military courts' jurisdiction over post-trial cruel and unusual punishment claims by deciding the merits of the issue. In that case, Judge Gierke and Judge Sullivan specifically and explicitly asserted jurisdiction over post-trial cruel and unusual punishment claims in their concurring and dissenting opinions, respectively. As Judge Gierke noted in his separate concurrence, the court's majority asserted jurisdiction *sub silentio* by "deciding the merits of the issue." *Sanchez*, 53 M.J. at 397. Like the instant case, the appellant in *Sanchez* did not complain about her treatment at the confinement facility until after she was released, and apparently did not raise the matter in her R.C.M. 1105 submission. The treatment she complained of occurred both before and after the convening authority's action.[8]

We hold that we have jurisdiction over the instant post-trial cruel and unusual punishment claim for several reasons. First, appellant's case is distinguishable from *Goldsmith* in that appellant asks us to examine on direct appeal, rather than by extraordinary writ, the cruel and unusual manner in which his sentence was executed. Likewise, appellant's appeal is not final, nor have all aspects of appellant's sentence been ordered executed. Appellant seeks a reduction in his yet to be affirmed sentence, while petitioner *Goldsmith* sought injunctive relief against a service secretary.

Second, our congressional mandate to affirm "the sentence or such part or amount of the sentence, as [we] find[ ] correct in law and fact and determine[ ] ... should be approved," includes the enforcement of the UCMJ's prohibition against the infliction of cruel and unusual punishment. UCMJ art. 66(c); *see also* UCMJ art. 55. For over eighty years, Article 55, UCMJ, and its precursor, Article of War 41,[9] have specifically prohibited, separate and apart from Eighth Amendment prohibitions, the infliction of "cruel and unusual punishments" upon persons subject to military jurisdiction. Article 66(c) and Article 55, UCMJ, clearly indicate Congress' longstanding and continuing intent for military appellate courts to consider cruel

---

8. In *United States v. Towns*, 52 M.J. 830 (A.F.Ct. Crim.App.2000), the appellant raised his cruel and unusual punishment complaint in his R.C.M. 1105 submission. The Air Force court asserted jurisdiction but held that its jurisdiction was limited to alleged cruel and unusual punishment which occurred before the convening authority's action and which was documented in the record of trial. *See Towns*, 52 M.J. at 833. Because the mistreatment alleged in the instant case apparently occurred prior to action, we do not have to decide whether our jurisdiction extends to conduct occurring after action, but before the appeal is final. To the extent *Towns* may be read to hold that when exercising our jurisdiction, we may not consider matters added to the record of trial after the convening authority takes action, we respectfully disagree.

9. Article 41, 1920 Articles of War, Act of June 4, 1920, 41 Stat. 787, stated: "Cruel and unusual punishments of every kind, including flogging, branding, marking, or tattooing on the body, are prohibited." *See also Manual for Courts–Martial, U.S. Army*, 1921, paras. 344–45, at 273.

and unusual punishment issues in the course of their normal appellate review.

Appellant argues, in effect, that because of the repeated use of unjustified and unlawful physical force against him by a guard, the USACFE altered the judgment of the trial court and imposed punishment beyond that adjudged by the court and ultimately ordered executed by the convening authority. Article 66(c), UCMJ, charges this court with examining the appropriateness of sentences. During that examination, we may consider whether cruel and unusual punishment was inflicted upon an appellant.

Third, this court is best able to grant relief by sentence reassessment. Unlike the facts in *Goldsmith* where petitioner Goldsmith's court-martial was final and he was able to seek relief from an adverse administrative action only through administrative or civil judicial channels, appellant's court-martial is not final, and this court can grant relief through the instant direct appeal.[10] Injunctive, declaratory, and habeas relief in federal district court are inappropriate in appellant's case because appellant is currently not confined and seeks relief for *past acts* of physical abuse by a USACFE guard. Likewise, a monetary damage claim in federal district court for cruel and unusual punishment is barred by the *Feres* doctrine.[11] *See Sanchez,* 53 M.J. at 398 (Sullivan, J., dissenting); *Walden v. Bartlett,* 840 F.2d 771, 774 (10th Cir. 1988). Prior to *Feres* there was precedent for holding individuals civilly liable for damages resulting from punishments not sanctioned by military custom or from illegal punishment imposed as an act of malice. *See* W. Winthrop, *Military Law and Precedents,* 884 (2d ed.1920 Reprint) [hereinafter Winthrop]. Because appellant's sentence has not been finally approved and executed, this court is able to provide appellant some meaningful relief through sentence reassessment.

Finally, this court has an obligation to act, at appropriate times, to insure that each soldier "is afforded the protections that Congress intended [for him to] have." *See United States v. Scalarone,* 54 M.J. 114, 118 (2000) (Cox, S.J., concurring). In instances of unlawful pretrial punishment (UCMJ art. 13, 10 U.S.C. § 813), the victim may seek relief at trial or after trial. *See generally United States v. Southwick,* 53 M.J. 412, 416 (2000); *United States v. Huffman,* 40 M.J. 225, 227 (C.M.A.1994). The parallel applications of Article 13 and Article 55, UCMJ, are obvious. The conduct alleged by appellant violates provisions of the Uniform Code of Military Justice specifically intended to protect those in subordinate, dependent, and powerless positions. *See* UCMJ art. 93, 10 U.S.C. § 893 (maltreatment of subordinates). Access to, and timely action by, the courts are essential to the maintenance and good order of the military. In military prisons, limitations on the conduct of those in positions of power and the ability of the military courts to provide meaningful relief in the face of substantiated abuses of power contribute to an atmosphere of discipline and civility and tend to reduce the commission of criminal acts by inmates. The humane treatment of inmates further protects the correctional system by not provoking mutiny (UCMJ art. 94, 10 U.S.C. § 894), and escape (UCMJ art. 95, 10 U.S.C. § 895).[12]

## CRUEL AND UNUSUAL PUNISHMENT

■ The Supreme Court has distinguished three types of inmate claims of cruel and unusual punishment: denial of medical care (*see, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); conditions of confinement (*see, e.g., Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); and excessive use of force (*see, e.g.,*

---

10. Appellant might seek additional administrative sentence relief and monetary compensation from the Army Board for Correction of Military Records after exhausting administrative, and, presumably, judicial channels. *See* 10 U.S.C. § 1552 (1994); Army Reg. 15–185, Army Board for Correction of Military Records (29 Feb. 2000).

11. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *see also Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981) (holding that the *Feres* doctrine extends to intentional torts suffered incident to service).

12. The notorious 1969 "Presidio stockade mutiny" evidenced the importance of the humane treatment of inmates. *See generally United States v. Sood,* 42 C.M.R. 635, 1970 WL 7185 (1970).

*Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). *See Avila,* 53 M.J. at 101. The instant case is one of excessive use of force.

The Supreme Court held "repugnant to the Eighth Amendment[,] punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the prison official "must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted).

Addressing the objective requirement, the Supreme Court in *Hudson* recognized that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [*even*] *when the inmate does not suffer serious injury.*" *Hudson,* 503 U.S. at 4, 112 S.Ct. 995 (emphasis added). The Court reasoned: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency *always are violated.* This is true whether or not significant injury is evident."[13] *Hudson,* 503 U.S. at 9, 112 S.Ct. 995 (emphasis added) (citing *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). However, the Eighth Amendment's prohibition "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 10, 112 S.Ct. 995 (citations omitted).

Addressing the subjective requirement, the Supreme Court in *Whitley,* 475 U.S. at 320, 106 S.Ct. 1078 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)), stated that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" In *Towns,* the Air Force court found that the guards' harassing, degrading, and assaultive treatment of Towns, without a legitimate purpose, constituted cruel and unusual punishment.[14] Like Towns, appellant in this case suffered no lasting or permanent physical injury.

In applying the *Farmer* requirements to appellant's Eighth Amendment and Article 55, UCMJ, claim, the only evidence before us is the uncontested affidavits of the appellant and his fellow inmates concerning their treatment at the USACFE. The government has not contested the appellant's allegations, submitted conflicting affidavits for our consideration, or requested a post-trial fact-finding hearing. In *United States v. Ginn,* 47 M.J. 236, 248 (1997) (third principle), our superior court held, in an ineffective assistance of counsel case, that "if the affidavit is factually adequate on its face to state a claim of legal error and the Government ... does not contest the relevant facts ... the court can proceed to decide the legal issue on the basis of those uncontroverted facts." Under the circumstances of this case, we will apply *Ginn's* third principle[15] and determine the question based upon the evidence provided by appellant, i.e., appellant's affidavit and the affidavits of the other inmates submitted on his behalf.[16]

**13.** Colonel Winthrop recognized a similar principle as early as 1886, observing, "[P]erhaps as satisfactory an explanation of [cruel and unusual punishment] as can readily be given would be a punishment which inflicted an amount of bodily (or mental) suffering or injury out of all reasonable proportion to the full demands of justice." Winthrop, *supra,* at 398.

**14.** Master Sergeant Towns was subjected to cruel and unusual punishment when, for nine hours, confinement facility guards "yelled at him; pushed him to the ground; smeared his face with

shaving cream; packed shaving cream in his ears and nostrils; made obscene comments about his wife and daughter; forced him to the floor with a riot shield; sprayed him with water from a hose until he was soaking wet; forced him to strip and spank himself; stomped on his stocking feet...." *Towns,* 52 M.J. at 832.

**15.** *See United States v. Lynn,* 54 M.J. 202 (2000).

**16.** While many of the other affiants allege that they were struck in the testicles with similar painful results, they do not assert that they wit-

■ We find that the guard, under the pretense of conducting a "pat down," maliciously and sadistically struck appellant in his testicles several times with the intent of unnecessarily and wantonly causing appellant physical and mental pain. We also find that the force applied to appellant's testicles was sufficiently serious and not de minimis. Accordingly, we hold that the guard's acts constituted cruel and unusual punishment in violation of Article 55, UCMJ, and the Eighth Amendment. While prison guards may lawfully frisk and search inmates to insure the safety of the institution and its personnel, they may not do so in a manner calculated to intentionally cause unnecessary physical and mental pain.

Although the Supreme Court in *Hudson* did not plainly resolve the split in the federal circuits concerning whether a "rogue" guard's unauthorized actions can constitute cruel and unusual punishment, the affiants' uncontested assertions in this case that the guard's assaults were repeated occurrences witnessed by USACFE supervisors without the offending guard being counseled or removed, places this case within the four corners of the *Hudson* decision. *See Hudson*, 503 U.S. at 12, 112 S.Ct. 995.

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■ In *Coffey*, 38 M.J. at 291,[17] and *Miller*, 46 M.J. at 250–51,[18] our superior court determined that absent "unusual or egre-

gious circumstances," an appellant is required to exhaust administrative remedies prior to seeking relief from a service court of appeals for cruel and unusual punishment.[19] The purpose of requiring exhaustion of administrative remedies, "[i]n addition to promoting resolution of grievances at the lowest possible level," is to facilitate appellate review of the complaint by insuring the development of an adequate record. *Miller*, 46 M.J. at 250. The Air Force court in *Towns* did not require the exhaustion of administrative remedies because the court determined that the appellant's Eighth Amendment and Article 55, UCMJ, complaint, as initially contained in appellant's R.C.M. 1105 submission, sufficiently developed the facts. *See Towns*, 52 M.J. at 834.

Unlike allegations involving conditions of confinement and medical care deprivation where the competing needs of the confinement facility and the inmate may be evaluated and addressed by the confinement facility hierarchy, allegations of cruel and unusual punishment by excessive force generally do not offer anything to resolve "at the lowest level." When an unlawful assault is committed against an inmate, the cruel and unusual punishment is complete, leaving nothing to resolve. Likewise, where a case clearly involves the malicious use of force against an inmate by a prison official, the appellate courts are not tasked to balance the needs of the confinement facility with the needs of the inmate because there are no legitimate needs of the confinement facility to balance. How-

---

nessed appellant being so treated. As noted above, the affiants are imprecise concerning when the alleged assaults took place and who was observed being assaulted. Only one affiant alleges that he complained, at an unspecified time, to the USACFE hierarchy concerning the assaults and submitted a complaint to the Inspector General.

17. The petitioner, in an extraordinary writ, asserted cruel and unusual punishment due to conditions of confinement.

18. The appellant, in an Article 67, UCMJ, 10 U.S.C. § 867, appeal, asserted cruel and unusual punishment due to restrictions on practicing his religion.

19. Our superior court has stated that inmates should exhaust the inmate grievance system and petition for relief under Article 138, UCMJ, 10

U.S.C. § 938, prior to seeking judicial relief. *See Miller*, 46 M.J. at 250; *Coffey*, 38 M.J. at 291. We note that in the Army, paragraph 20–5b of Army Regulation 27–10, Legal Services: Military Justice (24 June 1996), precludes the use of Article 138, UCMJ, for complaints concerning confinement. Remaining sources of relief would be the prisoner grievance system (DD Form 510 complaints filed in accordance with Army Reg. 190–47, Military Police: The Army Corrections System, para. 10–14 (15 Aug. 1996)), and complaints to the Inspector General (Army Reg. 20–1, Inspector General Activities and Procedures (15 Mar. 1994)). Military prisoners may also file complaints with the military police (R.C.M. 301(a), (b)) or prefer charges against their tormentor (UCMJ art. 30, 10 U.S.C. § 830).

ever, such balancing is required when resolving cases dealing with conditions of confinement and medical care deprivation. In these cases, the appellant's exhaustion of administrative remedies assists the appellate court by developing an adequate record necessary for such balancing.

■ We distinguish *Coffey* and *Miller* from the instant case because those cruel and unusual punishment cases did not involve claims of excessive force. We are satisfied that appellant's uncontested affidavit and the uncontested affidavits of the other affiants provide this court sufficient evidence to evaluate appellant's claim. Moreover, we are not convinced that a violation of Constitutional proportions can be forfeited by the manner in which the facts are collected. As Senior Judge Cox recognized in his concurrence in *Scalarone*, an inmate soldier's lack of sophistication should be recognized and considered in determining what effect to give his lack of complaint to confinement facility supervisors or to his legal counsel and the resultant failure to note such maltreatment in his R.C.M. 1105 submissions. *See Scalarone*, 54 M.J. at 118. Furthermore, accepting as true the assertions of several of appellant's fellow inmates that the guard's supervisors were present during such assaults and did not intervene, such widespread ratification of abuse constituted "unusual and egregious circumstances" so as to justify appellant's failure to exhaust administrative remedies. *See Coffey*, 38 M.J. at 291.

■ Appellant's cruel and unusual punishment was complete with each individual assault. Certainly, there came a point where appellant realized that the striking of his testicles by the guard was intentional rather than inadvertent. Appellant should have sought administrative relief at that point. However, there was no relief to be gained through administrative channels for the completed acts of assault by the guard. Appellant's failure to report the assaults after realizing that he was being maliciously and sadistically assaulted may be a factor in determining appellant's remedy for subsequent assaults that could have been forestalled by such reporting. Where an appellant fails to seek timely relief from cruel and unusual punishment involving the use of excessive force, such failure affects the quantum of any remedy but not the right to seek a remedy.

## REMEDY

■ Appellant asserts that he suffered "several" unwarranted, wanton, and malicious physical assaults over a period of time slightly less than ninety days. Other affiants allege similar assaults but do not attest to having observed appellant being assaulted or allege with any greater specificity when and how many times these assaults against appellant occurred. Appellant's vague and unspecific complaint does not permit us to apply a formulaic approach in granting relief.[20] Accordingly, we will utilize a "totality of the circumstances" approach. We find the following matters to be relevant to our decision regarding appellant's sentence relief: appellant was struck in the testicles more than two times; appellant suffered both physical and mental pain, but no lasting injury; confinement facility supervisors were aware of the abusive behavior and failed to take corrective action; appellant failed to complain to the USACFE chain of command or to seek other administrative relief due to his perception that such complaints would be ignored; and confinement facilities have an inherently coercive atmosphere for inmates. Accordingly, considering all of the above facts and circumstances in assessing the appropriateness of the sentence (UCMJ art. 66(c)), we will grant appellant one month of confinement relief.[21]

The findings of guilty are affirmed. After considering the entire record, the court af-

20. *See, e.g.,* R.C.M. 305(k); *United States v. Lorance,* 35 M.J. 382 (C.M.A.1992); *United States v. Allen,* 17 M.J. 126 (C.M.A.1984); *United States v. Suzuki,* 14 M.J. 491 (C.M.A.1983).

21. The matters appellant raised in his post-trial submission to the convening authority do not warrant relief.

firms only so much of the sentence as provides for a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to Private E1.

Judge CARTER and Judge NOVAK concur.