OPINION OF THE COURT ON FURTHER REVIEW
OLMSCHEID, Judge:
A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of making a false official statement (two specifications), sodomy, assault with the intent to commit rape, indecent acts (two specifications), and communicating a threat, in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 925, and 934 [hereinafter UCMJ]. The panel members sentenced appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to Private El. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for fifty-five months, forfeiture of all pay and allowances, and reduction to Private El.[1]
This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. On 20 June 2006, the court adopted a sua sponte suggestion for en banc consideration. We have considered the record of trial, appellant’s assignments of error, the government’s reply thereto, appellant’s reply brief, oral arguments, and the matters appellant personally raised pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982). Appellant asserts, inter alia, and we agree, that his convictions constitute an unreasonable multiplication of charges. On 2 May 2006, we heard oral argument on appellant’s assertion that he was subjected to cruel and unusual punishment in violation of Article 55, UCMJ, 10 U.S.C. § 855, and the Eighth Amendment.[2] We agree that under our current precedent, appellant has established a valid claim under Article 55, UCMJ, and the Eighth Amendment, and will grant appropriate relief. However, in all cases arising ninety days after this opinion, an appellant must show, absent unusual or egregious circumstances, that he has exhausted his administrative remedies before being entitled to any relief based on assertions of cruel and unusual punishment.

CRUEL AND UNUSUAL PUNISHMENT

FACTS
On 25 February 2004, we returned this ease to The Judge Advocate General of the Army to remand the record to a convening *681 authority for a hearing pursuant to United States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967), on the issue of whether appellant suffered cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, while incarcerated at the United States Army Confinement Facility Europe (USACFE). United States v. Bright, 60 M.J. 936 (Army Ct.Crim.App.2005). The DuBay hearing was conducted on 8 June 2004 and 2 May 2005.
After the hearing, the military judge made findings of fact, which we adopt. Specifically, the military judge found that appellant was sentenced on 5 May 2000, originally confined post-trial at the USACFE for fourteen weeks until mid-August 2000, and transferred to the Regional Confinement Facility (RCF), Fort Knox, Kentucky, to serve the remainder of his confinement. While confined, one of the guards at USACFE, Sergeant (SGT) Davis, assaulted appellant seven to ten times during frisks of appellant. The military judge found:
Each guard who frisked appellant stood behind appellant while appellant held his arms out from his body at shoulder height and had his legs spread. The purpose of each frisking was to determine if appellant had left the dining facility with food, flatware, or other contraband, a legitimate purpose. The guards were to check appellant’s entire body, including his groin area, to determine if contraband was present. They were to run their fingers under the waistband of appellant’s underwear and pants and pull appellant’s underwear and pants away from his body to check for the presence of contraband. Guards other than SGT Davis generally rubbed or patted appellant’s pants, legs, and groin area to determine whether contraband was present.
Each time SGT Davis frisked appellant, he pulled appellant’s underwear and pants up rather than out. He did so forcefully and intentionally, causing appellant to sense pain in his groin and genital areas. While stooped and behind appellant to check appellant’s legs and pant legs, SGT Davis forcefully and intentionally struck appellant in his groin and genitals with an upward chopping motion of his hand, causing appellant to sense pain. The pain that appellant sensed from SGT Davis’s actions was not so sever that appellant doubled over from it, stumbled or fell, but it was significant pain. Appellant could walk despite the pain. Appellant was embarrassed each time. He suffered psychological pain, but not to the point he could not function. SGT Davis would smirk or grin each time.
The military judge further found that appellant had the ability to, but did not, file a complaint about SGT Davis’ conduct with the Army Inspector General’s office, the prison’s chain of command, or through the prison’s grievance system. Likewise, appellant did not complain about SGT Davis’ conduct in appellant’s clemency petition to the convening authority in April 2001. Instead, appellant first complained about the guard’s conduct to his appellate defense counsel in May 2002, approximately twenty months after he left USACFE. The military judge further concluded:
Appellant ... waited to complain until he was confined at the RCF, Fort Knox, because he thought guards would learn of his complaint and retaliate against him due to the small community of guards and easy communication between them; because he thought he could complain through his attorney to the appellate courts without guards finding out; and, because he had gotten closer to his date of release from confinement and thought an investigation would take a while. Those were reasonable considerations for appellant as an inmate, as corroborated by other inmates who expressed the same or similar concerns when testifying at the fact-finding hearing, but the circumstances appellant considered were not unusual or egregious. Rather, they were concerns that any inmate would have in the usual confinement situation, and concerns that other inmates did have. There was no evidence that guards laughed at appellant when he complained about SGT Davis’ action, that any DD Form 510 that appellant submitted regarding SGT Davis’ actions was ignored, or that appellant or any other inmate actu *682 ally suffered retaliation as a result of complaining about SGT Davis’ actions.
Finally, the military judge found that USACFE officials did not know of and ratify SGT Davis’ actions toward appellant and that, if the commander had known, he would have investigated the matter and forwarded any credible complaint to the United States Army Criminal Investigation Command for investigation. If appropriate, the commander would have relieved SGT Davis of his duties.
The military judge concluded that “[fjrom seven to [ten] times while frisk searching appellant..., SGT Davis both maliciously and sadistically struck appellant in his groin and genitals, and maliciously and sadistically yanked up appellant’s pants and underwear; each time SGT Davis had a culpable state of mind.” The military judge concluded that SGT Davis’ conduct was “wholly unrelated to any legitimate penological or disciplinary purpose in a confinement facility” and that each time “SGT Davis acted with the intent of unnecessarily and wantonly causing appellant physical and mental pain.” The military judge ruled that “SGT Davis’ acts constituted cruel and unusual punishment in violation of Article 55, UCMJ, and the Eighth Amendment,” but that appellant had not exhausted his administrative remedies and that no unusual or egregious circumstances justified his failure to do so.
LAW
Inmate claims of cruel and unusual punishment, including those of excessive use of force, must satisfy both an objective and a subjective component to warrant relief. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Objectively, the inmate must demonstrate that the alleged deprivation or injury was “sufficiently serious” to warrant relief. Id.; United States v. Sanchez, 53 M.J. 393, 395 (C.A.A.F.2000); United States v. Avila, 53 M.J. 99, 101 (C.A.A.F.2000); United States v. Kinsch, 54 M.J. 641, 647 (Army Ct.Crim.App.2000). The inmate must also establish that the guard had a culpable state of mind and subjectively intended to maliciously or sadistically harm the inmate through the use of wanton or unnecessary force, and that the injury was not caused by a good faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Kinsch, 54 M.J. at 647; and United States v. Roth, 57 M.J. 740, 742 (Army Ct.Crim.App.2002). Allegations of post-trial cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, are reviewed de novo. See United States v. Lovett, 63 M.J. 211, 214-216 (C.A.A.F.2006) (analyzing claims regarding confinement conditions at the “old” United States Disciplinary Barracks).
DISCUSSION
Before being entitled to relief on a claim of cruel and unusual punishment, our superior court has said that an accused “must [demonstrate], absent some unusual or egregious circumstance, that he has exhausted [administrative remedies].” United States v. Miller, 46 M.J. 248, 250 (C.A.A.F.1997), United States v. Coffey, 38 M.J. 290 (C.M.A.1998). See also Lovett, 63 M.J. at 215. The court explained:
In addition to promoting resolution of grievances at the lowest possible level, the exhaustion requirement ... is intended to ensure that an adequate record has been developed with respect to the procedures for considering a prisoner grievance and applicable standards. An appellant who asks us to review prison conditions, a matter normally not within our appellate jurisdiction, must establish a clear record demonstrating both the legal deficiency in administration of the prison and the jurisdictional basis for our action.
Miller, 46 M.J. at 250.
In United States v. Kinsch, our court analyzed whether the requirement applied to cruel and unusual punishment claims dealing with excessive force. We held that the requirement to exhaust all administrative remedies prior to seeking relief through the courts did not apply to such claims. Kinsch, 54 M.J. at 648-49. Observing that the Supreme Court has recognized “three types of inmate claims of cruel and unusual punishment: denial of medical care; conditions of confinement; and excessive use of force,” id. *683 at 646 (citations omitted), we found that Coffey and Miller were not controlling precedent on the issue because neither case involved a claim of excessive force. Instead, we reasoned:
Unlike allegations involving conditions of confinement and medical care deprivation where the competing needs of the confinement facility and the inmate may be evaluated and addressed by the confinement facility hierarchy, allegations of cruel and unusual punishment by excessive force generally do not offer anything to resolve ‘at the lowest level.’ When an unlawful assault is committed against an inmate, the cruel and unusual punishment is complete, leaving nothing to resolve. Likewise, where a case clearly involves the malicious use of force against an inmate by a prison official, the appellate courts are not tasked to balance the needs of the confinement facility with the needs of the inmate because there are no legitimate needs of the confinement facility to balance. However, such balancing is required when resolving cases dealing with conditions of confinement and medical care deprivation. In these cases, the appellant’s exhaustion of administrative remedies assists the appellate court by developing an adequate record necessary for such balancing.
Id. at 648-49. Consequently, we held that in excessive force cases, “[wjhere an appellant fails to seek timely relief from cruel and unusual punishment involving the use of excessive force, such failure affects the quantum of any remedy but not the right to seek a remedy.”[3] Id. at 649. We now revisit the issue.
Two years after our opinion in Kinsch, the Supreme Court addressed a similar question relating to the exhaustion requirement. In Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Court considered the issue of whether a prisoner’s civil suit alleging an assault by a prison guard must meet the same exhaustion requirement as prisoner complaints about conditions of confinement.[4] Specifically, the Court analyzed whether claims of a single instance of excessive force are “governed by a provision of the Prison Litigation Reform Act [ (PLRA) ] of 1995, 110 Stat. 1321-73, as amended, 42 U.S.C. § 1997e(a) (1994 ed., Supp. V), that directs: ‘No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies available are exhausted.’” Porter, 534 U.S. at 519-20, 122 S.Ct. 983. The Court held that the exhaustion requirement applied to all inmate suits about prison life, to include single incidents of excessive force. Id. at 520, 532, 122 S.Ct. 983. We find the reasoning of the Court in this case instructive on the issue before us.
The Court began its analysis by looking to the purposes for which Congress enacted the statute. First, requiring exhaustion of administrative remedies affords “corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.” Id. at 525, 122 S.Ct. 983. “In some instances, corrective action taken in response to an inmate’s grievance might improve prison administra *684 tion and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims.” Id. (internal quotations omitted). Second, “for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.” Id. These purposes parallel those described in Miller as the basis for the exhaustion requirement imposed by our superior court: (1) promoting resolution of grievances at the lowest level and (2) establishing an adequate record for any subsequent litigation. Miller, 46 M.J. at 250. The Court found no reason to conclude that these policy considerations were any less compelling in the context of excessive force claims.
Moreover, just this term, the Supreme Court addressed another civil suit arising under the PLRA. Woodford v. Ngo, - U.S. -, 126 S.Ct. 2378, 165 L.Ed.2d 368, 2006 WL 1698937 (2006). In determining that a prisoner who had failed to pursue administrative remedies within the required time period for seeking administrative relief had not exhausted his administrative remedies, the Court reiterated the above purposes behind the exhaustion requirement. “[Exhaustion] gives prisoners an effective incentive to make full use of the prisoner grievance process and accordingly provides the prison with a fair opportunity to correct their own errors.” Id. at -, 126 S.Ct. 2378. Furthermore, “[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.” Id. at-, 126 S.Ct. 2378.
The Supreme Court in Porter found no reason to conclude that these policy considerations were any less compelling in the context of excessive force claims. We likewise find that the rationales for requiring exhaustion of administrative remedies apply equally whether the claim is one involving conditions of confinement or the use of excessive force. Requiring the exhaustion of administrative remedies promotes the proper treatment of prisoners because it encourages the notification of officials if guards mishandle prisoners, allowing officials to take corrective action against such guards. Investigations, whether administrative or criminal, are important vehicles to determine the facts in these cases and early investigations ensure the best record. Affidavits and even judicial hearings held years after the alleged conduct are poor substitutes for a competent and timely administrative or criminal investigation of alleged abuse.
We have reconsidered the basis of our rationale in Kinsch in light of the above opinions. The Supreme Court decision in Porter specifically rejected the premise that its previous cases distinguishing excessive force claims from conditions of confinement claims were relevant in determining the procedural prerequisites of filing a claim in court. The Court stated:
Hudson and Fanner trained solely and precisely on proof requirements: what injury must a plaintiff allege and show; what mental state must a plaintiff plead and prove. Proof requirements once a case is in court, however, do not touch or concern the threshold inquiry before us: whether resort to a prison grievance process must precede resort to a court.
Porter, 534 U.S. at 529, 122 S.Ct. 983. The Supreme Court’s rejection of this premise undermines the basic foundation of the holding in Kinsch that conditions of confinement claims are fundamentally different in this context than excessive force claims.
Furthermore, contrary to our conclusion in Kinsch, we can no longer categorically say that excessive force claims do not offer anything to resolve at the lowest level. As the Supreme Court noted in Porter, excess force claims may also involve general prison conditions. “[I]n the prison environment a specific incident may be symptomatic rather than aberrational. An unwarranted assault by a corrections officer may be reflective of a systemic problem traceable to poor hiring practices, inadequate training, or insufficient supervision.” Id. at 523,122 S.Ct. 983 (internal citations omitted). This case is a plain example of such a situation.[5]
*685 Moreover, while it is true that in a case that “clearly involves the malicious use of force against an inmate by a prison official,” there is no need to “balance the needs of the confinement facility with the needs of the inmate because there are no legitimate needs of the confinement facility to balance,” the question is rarely that simple. Kinsch, 54 M.J. at 648-49. First, not every malevolent touch by a prison guard constitutes cruel and unusual punishment. McMillian, 503 U.S. at 9, 112 S.Ct. 995. “The Eighth Amendment’s prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.” Id. at 9-10,112 S.Ct. 995 (internal quotations omitted).
Also, in many cases, the actual determination of whether force used by a prison guard is “excessive” will itself involve a balancing of competing interests. As the Supreme Court has stated, “officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance.” Id. at 6, 112 S.Ct. 995 (internal quotations omitted). Thus, our rationale in Kinsch may apply differently, even to claims involving allegations of excessive force, depending on the degree of clarity of maliciousness involved.
Rather than applying the exhaustion requirement on a case-by-case determination of (1) the type of claim, i.e., conditions of confinement versus excessive force; and (2) whether a claim of excessive force “clearly involves the malicious use of force,” we believe the better solution is to apply the requirement to all claims of cruel and unusual punishment. This will provide more certainty as to exactly what is required of an appellant seeking relief for such claims during the course of appellate review.
Because of our holding in Kinsch, however, inmates suffering similar situations may have foregone the opportunity to avail themselves of administrative remedies, choosing instead to seek redress through the court system. To ensure that such inmates have not relied on our previous holding to their detriment, we will apply our holding prospectively. Therefore, for all allegations of cruel and unusual punishment arising ninety days after this opinion, we hold in accordance with the mandate of our superior court, that an accused “must [demonstrate], absent some unusual or egregious circumstance that he has exhausted [administrative remedies] before being entitled to relief based on a claim of cruel and unusual punishment.” Miller, 46 M.J. at 250.
In the present case, we returned the case to the convening authority for a DuBay hearing. As a result, the record is sufficient to resolve appellant’s claims. The military judge found that appellant was subjected to cruel and unusual punishment while incarcerated after his trial, but that appellant had failed to exhaust his administrative remedies. Because appellant did suffer cruel and unusual punishment sufficient to obtain relief under Article 55, UCMJ, and the Eighth Amendment, we will grant appropriate relief in our decretal paragraph.

UNREASONABLE MULTIPLICATION OF CHARGES

Appellant contends that several of the offenses amount to an unreasonable multiplication of charges. We agree. See United States v. Quiroz, 55 M.J. 334, 337 (C.A.A.F.2001). The two false official statements alleged in Specifications 1 and 2 of Charge II were one statement made to the same person at the same time. We will consolidate the specifications into one specification and dismiss the other specification.
The sodomy (originally charged in the Specification of Charge IV as sodomy by force and without consent) was one of the indecent acts alleged in Specification 2 of Charge V. We will dismiss the sodomy offense in Charge IV and its Specification.
*686 The two specifications of indecent acts alleged in Specifications 1 and 2 of Charge V were a single criminal course of conduct. We will consolidate the specifications into one and dismiss the other.
The assault with the intent to commit rape in the Specification of Charge III was committed, in part, by communicating the threatening words, “Bitch, you better fuck or I’m going to beat your ass,” as alleged in Specification 3 of Charge V, communicating a threat. As the offenses are one and the same, we will dismiss the communication of a threat offense.
The military judge considered the offenses we consolidated above multiplicious for sentencing and so instructed the members. Appellant has therefore suffered no prejudice regarding the sentence.[6]

CONCLUSION

Specifications 1 and 2 of Charge II are consolidated and redesignated as follows:
The Specification: In that Private First Class (E3) Andrae L. Bright, U.S. Army, did, at or near Bad Kreuznach, Germany, on or about 13 December 1999, with intent to deceive, sign an official statement, to wit: a sworn statement to CID Special Agent Brooks, dated 13 December 1999, stating that he did not hit or threaten [SF], which statement was false in that he did hit and threaten [SF], and was known by the said Andrae L. Bright to be so false.
The findings of the Specification of Charge II, as so amended, and Charge II are affirmed. The findings of the original Specification 2 of Charge II are set aside and dismissed.
Speeifications 1 and 2 of Charge V are consolidated and redesignated as follows:
The Specification: In that Private First Class (E3) Andrae L. Bright, U.S. Army, did, at or near Bad Kreuznach, Germany, on or about 12 December 1999, wrongfully commit an indecent act with [SF], a female not his wife, by having oral and vaginal sex with her and striking her buttocks in the presence of others with the intent to gratify his sexual desires.
The findings of the Specification of Charge Y, as so amended, and Charge V are affirmed. Specifications 2 and 3 of Charge V are set aside and dismissed. The Specification of Charge IV and Charge IV is set aside and dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of United States v. Sales, 22 M.J. 305 (C.M.A.1986), we affirm only so much of the sentence as provides for a dishonorable discharge, confinement for fifty-four months, forfeiture of all pay and allowances for fifty-four months, and reduction to Private El. All rights, privileges, and property, of which appellant has been deprived by virtue of that part of his sentence set aside by this decision, are ordered restored. See UCMJ arts. 58b(e) and 75(a), 10 U.S.C. §§ 858b(c) and 875(a).
Chief Judge DUNN, Senior Judge SCHENCK, Judge MAHER, Judge HOLDEN, Judge ZOLPER, Judge WALBURN, and Judge KIRBY concur.
Senior Judge JOHNSON and Senior Judge BARTO took no part in the decision of this ease.

. The convening authority’s action and the promulgating order fail to reflect that at trial, the military judge ordered that appellant receive sixteen days of confinement credit. See Rules for Court-Martial [hereinafter] R.C.M. 1107(f)(4)(F); Army Reg. 27-10, Legal Services: Military Justice, para. 5-32a (16 November 2005) (requiring a convening authority to "show in [the] initial action all credits ... regardless of the source of the credit .... ”); United States v. Delvalle, 55 M.J. 648, 649 n. 1, 656 (Army Ct.Crim.App.2001); United States v. Arab 55 M.J. 508, 510 n. 2, 520 (Army Ct.Crim.App.2001). Accordingly, appellant will be credited with sixteen days of confinement credit.

. Oral argument was held before Senior Judge Schenck, Judge Olmscheid, and Judge Kirby, who also heard oral argument on appellant’s assertion that the evidence is factually and legally insufficient to support a finding of guilty of assault with intent to commit rape (Charge III and its Specification). Appellate defense counsel argued that this court should not be convinced beyond a reasonable doubt that appellant had the intent to commit rape. We disagree. After "weighing the evidence of record and making allowances for not having personally observed the witnesses,” we are convinced of appellant's guilt beyond a reasonable doubt. United States v. Gilchrist, 61 M.J. 785, 793 (Army Ct.Crim.App.2005) (citing United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987)).

. After Kinsch, our superior court decided United States v. White, 54 M.J. 469 (C.A.A.F.2001) (analyzing a claim of deprivation of substance abuse treatment, intimidation, threats, and extended periods of verbal abuse) and United States v. Erby, 54 M.J. 476 (C.A.A.F.2001) (analyzing claims of, inter alia, verbal abuse and ransacking of personal property), in which it again affirmed the exhaustion requirement. Appellant attempts to distinguish these cases by claiming that they are not applicable to the present case because they deal only with complaints involving denial of medical care and conditions of confinement, not the use of excessive force by guards. We find these cases, as well as our superior court's most recent decision in Lovett, supra, do not distinguish between cases involving denial of medical care, conditions of confinement, and those involving excessive force, and thus are relevant to the present case.

. The respondent alleged that correction officials singled him out for a severe beating. Appellant bypassed the prison's grievance procedure, and filed suit in federal district court alleging a violation of the Eighth Amendment. The district court dismissed the suit for failure to exhaust administrative remedies. The Second Circuit reversed, and held the exhaustion requirement only applied to conditions that affected prisoners generally, not single incidents. Porter, 534 U.S. at 521, 122 S.Ct. 983.

. The military judge found that "SGT Davis engaged in similar improper frisking of inmates *685 Kyle Kinsch, Jose Garza, John Emminger, Chad Benner, Joshua Fagan, Timothy Ellis, Charles F. Keesey, III, and David J. Faulkner while each was confined in the USACFE."

. Although not raised by appellant, we will take further corrective action regarding Charge II. The military judge granted a R.C.M. 917 motion in part, deleting the word "make” from the specifications of Charge II. The staff judge advocate, however, incorrectly advised the convening authority in his post-trial recommendation (SJAR) that appellant had been convicted of the specifications of Charge II as they had been referred to trial. Unless the convening authority states otherwise in his action, the approval of the sentence also implicitly approves the findings the SJA reported in the SJAR. United States v. Diaz, 40 M.J. 335, 337 (C.M.A.1994). Rather than return appellant’s case to the convening authority pursuant to R.C.M. 1107(g) for a new recommendation and action, in the interest of judicial economy we will correct the SJAR error by modifying the specification in our decretal paragraph. We are satisfied, however, that the error did not prejudice appellant as to the sentence. The error was minor, and the convening authority was not misled as to the true nature of appellant’s misconduct.